# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RHONDA LYNN WALKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-11-141-FHS-SPS** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

The claimant Rhonda Lynn Walker requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled.  As discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on January 11, 1966, and was forty-three years old at the time of the administrative hearing. She has a high school education and past relevant work as a cashier/stocker and dessert cook (Tr. 18, 324). The claimant alleges that she has been unable to work since August 12, 2006, because of hepatitis C, high blood pressure, and anxiety (Tr. 161).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 23, 2006. The Commissioner denied her applications. ALJ Jodi B. Levine held an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 23, 2009. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant was disabled at step three because she met the criteria of Listing 12.04 and Listing 12.09 (Tr. 14). However, the ALJ also found that claimant would not meet any Listing if she ceased using drugs. The ALJ went on to find that the claimant had the

residual functional capacity ("RFC") to perform medium work, *i. e.*, she could lift/carry 25 pounds frequently and 50 pounds occasionally, stand/walk/sit for six hours in an eight-hour work day, and push/pull 25 pounds frequently and 50 pounds occasionally (Tr. 16). The ALJ found, however, that the claimant had moderate limitations in performing detailed work, maintaining attention and concentration, and dealing with the public (Tr. 16). The ALJ concluded that the claimant was unable to return to her past relevant work, but found that there was other work the claimant could perform in the national economy, *i. e.*, kitchen helper, auto detailer, motel housekeeper, and textile sewing operator (Tr. 19). Thus, the ALJ concluded that the claimant was not disabled at step five (Tr. 20).

## Review

The claimant contends that the ALJ erred by failing to properly analyze the materiality of her substance abuse. The undersigned Magistrate Judge agrees.

The claimant presented for mental health treatment on September 5, 2007, at which time she reported a history of physical and sexual abuse and stated that she was "fighting for her kids back" (Tr. 364-65). She was diagnosed with bipolar disorder, depressed, unspecified and amphetamine dependence, unspecified, and her GAF score was 53 (Tr. 368). Written comments during this visit reveal that claimant had not used methamphetamine in eight months but that she was still experiencing "a lot of mood swings, depression, anxiety, and anger problems" (Tr. 368). On September 27, 2007, it was noted that claimant was experiencing daily moods swings, suicidal thoughts, and

poor sleep (Tr. 372).  On November 11, 2007, claimant's medications included, *inter alia*, amitriptyline, buspirone, fluoxetine, meloxicam, and propoxyphene (Tr. 447).

The claimant was interviewed and examined by state examining physician Dr. Theresa Horton, Ph.D. on May 10, 2007 (Tr. 323-27).  During the interview, the claimant related that she first received mental health treatment when she was in her twenties and had tried to commit suicide on three occasions (Tr. 323).  Following each of those suicide attempts, the claimant was hospitalized for three days but neglected to follow up with outpatient care (Tr. 324).  She reported that she often starts tasks but very rarely finishes them and cited her back problems and fatigue as explanations (Tr. 324).  The claimant reported that she had a poor relationship with her biological father, who was an alcoholic (Tr. 324).  She also stated that her two children were removed from her custody by DHS because of her methamphetamine abuse, a drug she has used since she was 23 years old (Tr. 324).  However, the claimant told Dr. Horton that she had been clean since September 2006, with one relapse occurring in February 2007 (Tr. 325).  Dr. Horton noted that claimant had a "somewhat unusual presentation" but that her thought processes were "logical, organized and goal directed" (Tr. 325).  Dr. Horton's diagnosis was that claimant suffered from methamphetamine dependence (in remission), major depressive disorder, recurrent, moderate, and anxiety disorder, NOS (Tr. 326).  Dr. Horton did not think claimant was capable of managing her own benefits (Tr. 327).

Dr. Douglas Brady, Ph.D. testified at the administrative hearing, basing his opinions on a review of claimant's medical records.  Dr. Brady first recounted the

medical evidence that he reviewed and then went on to express his opinion that the claimant met the criteria for Listing 12.04 and Listing 12.09 in combination (Tr. 30-31). He commented that the claimant's activities of daily living were limited during "severe episode[s] of both concurrent use of methamphetamine and an outbreak of bipolar at the marked level" (Tr. 31). In response to the ALJ's question regarding the materiality of the claimant's drug use, Dr. Brady stated that her drug use was "very difficult to factor out" and continued by stating the following:

> Many times people, as we've talked in the past, who have bipolar do use medications concurrently in an attempt to self-medicate. There is a clear pattern of methamphetamine use. But also there is a pattern of anxiety which probably is essentially related to that. And then also the bipolar when a person is in a depressed phase, they will use methamphetamines to basically get them out of their depressed phase and only causes a kind of a feedback loop. The more you're depressed, you use methamphetamines, the more depressed you become and so forth.

(Tr. 32). Dr. Brady went on to testify that claimant's bipolar disorder likely caused her to self-medicate with methamphetamine use (Tr. 33). Upon direct questioning from claimant's attorney, Dr. Brady went on to state that "in the claimant's case, there appears to be concurrent use of amphetamine with her depressed phase of bipolar. So it looked like she is using to try to treat her severe depression which is part of the bipolar itself" (Tr. 37).

"An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423. When drug abuse is

present, the ALJ's task is to determine first whether the claimant is disabled. If the ALJ finds that the claimant is disabled, then the ALJ determines whether the claimant's "drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a); 416.935(a). The issue to be resolved is whether the claimant would still be found disabled if the claimant stopped using drugs. 20 C.F.R. §§ 404.1535(b); 416.935(b). To resolve this issue, the ALJ evaluates which of the claimant's limitations "would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2); 20 C.F.R. 416.935(b)(2). If the remaining limitations are deemed not disabling, then the claimant's drug addiction or alcoholism is considered a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(b)(2)(i); 416.935(b)(2)(i). Conversely, if the remaining limitations are deemed disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to the determination of disability. 20 C.F.R. §§ 404.1535(b)(2)(ii); 416.935(b)(2)(ii).

In this case, the ALJ relied heavily on Dr. Brady's testimony at the administrative hearing in finding that the claimant's drug use was material to the severity of her impairments. However, in doing so, the ALJ mischaracterized much of Dr. Brady's testimony. For example, the ALJ stated in her opinion that Dr. Brady testified that "the anxiety and depression were manifestations of the claimant's methamphetamine abuse" (Tr. 15). Besides the fact that Dr. Brady never made such a statement, there is no

evidence that bipolar disorder can be caused by substance abuse. *See Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006), *citing* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 187, 354 (4th Ed. 1994); Frederick K. Goodwin & Kay Redfield Jamison, *Manic-Depressive Illness* 219-25 (1990); Willem A. Nolen *et al.*, "Correlates of 1-Year Prospective Outcome in Bipolar Disorder: Results from the Stanley Foundation Bipolar Network," 161 Am. J. Psychiatry 1452 (2004); Marcia L Verduin *et al.*, "Health Service Use Among Persons with Comorbid Bipolar and Substance Use Disorders," 56 Psychiatric Services 475-76 (2005). The ALJ also failed to even mention Dr. Brady's testimony that the claimant's use of methamphetamines appeared to be a means of self-medicating, which constitutes improper picking and choosing among the medical evidence. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. *See also, Kangail*, 454 F.3d at 629 ("There was medical testimony that the plaintiff has 'a tendency to indiscriminately use drugs and alcohol' during her manic phases, which are frequent – about monthly. But the fact that substance abuse aggravated her mental illness does not prove that the mental illness itself is not disabling."), *citing Brown v. Apfel*, 192 F.3d 492, 499 (5th Cir. 1999); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).

Finally, the ALJ erroneously relied on Dr. Brady's statement that the claimant's drug use could not be separated from her bipolar disorder to support her finding that the claimant's drug abuse was a contributing factor material to the finding of a disability. Shortly after the Social Security Act was amended to deny a disability determination based on substance abuse, the Social Security Administration distributed a teletype to clarify the ways in which the law should be applied. The teletype provided that "[w]hen it is not possible to separate the mental restrictions and limitations imposed by [drug and alcohol abuse] and the various other mental disorders shown by the evidence, a finding of 'not material' would be appropriate." *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002) [internal quotations omitted]. Thus, "the agency directed that if the effects of a claimant's mental illness could not be separated from the effects of substance abuse, the abuse would be found *not* to be a contributing factor material to the disability determination." *Id.* [emphasis in original]. Thus, the fact that Dr. Brady testified that the claimant's "methamphetamine abuse and bipolar disorder could not be separated based upon the medical evidence of record" does not legally support the ALJ's finding that the claimant's drug abuse was a contributing material factor to a finding of disability. The ALJ failed to weigh all of the opinions offered by Dr. Brady, as discussed above, and her reasoning for a finding that claimant's methamphetamine use was a contributing factor material to her finding of disability is not supported by Dr. Brady's testimony. *See Bayer v. Astrue*, 2010 WL 1348416, *7 (D. Colo. 2010) (stating that "when from the record it is not possible to separate the mental restrictions and limitations imposed by substance

abuse and the other mental disorders shown by the record" a finding that substance abuse is not a contributing factor material to the disability determination is required), *citing McGoffin*, 288 F.3d at 1253.

Because the ALJ failed to properly analyze the materiality of claimant's substance abuse as outlined above, the undersigned Magistrate Judge concludes that the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of the medical evidence of record.

### Conclusion

In summary, the undersigned Magistrate Judge PROPOSES a finding that correct legal standards were not applied and the decision of the Commissioner is therefore not supported by substantial evidence, and accordingly RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED to the ALJ for further proceedings consistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma